**UNITED STATES** of America upon the relation and for the Use of the **TENNESSEE VALLEY AUTHORITY, Plaintiff,**

v.

An **EASEMENT AND RIGHT–OF–WAY OVER 1.0 ACRE OF LAND, MORE OR LESS, IN MADISON COUNTY, TENNESSEE.**

**Highland Memorial Gardens, Inc., et al., Defendants.**

**Civ. No. 1401.**

United States District Court
W. D. Tennessee, E. D.

Dec. 23, 1965.

Charles J. McCarthy, Gen. Counsel, Thomas A. Pedersen, Asst. Gen. Counsel, Paul T. Dunn, T. V. A., Knoxville, Tenn., for plaintiff.

Russell Rice, Jackson, Tenn., for defendants.

BAILEY BROWN, District Judge.

This is a review of an award made by commissioners in connection with a T.V.A. condemnation of an easement for a power line. The commissioners awarded compensation of $500 and the owner has appealed. As the basis for this review the Court has the transcript of the testimony and the exhibits admitted in evidence at the hearing before the commissioners and the briefs of the parties.

The tract involved lies about three miles north of the city limits of Jackson, consists of 78.35 acres, and has been dedicated and zoned for a cemetery. The tract is roughly rectangular in shape, with the long axis running east and

west, and is bordered on the west by U. S. Highway 45. The easement runs across the southeast corner of the tract, covers one acre, and there are no poles or towers located on the owner's tract. About eight acres of the tract on the west side, adjoining the entrance from the highway, have been laid out and developed for cemetery lots. There is a drainage ditch of substantial size on the east side that crosses the tract from north to south. About twenty acres of the tract lie east of the ditch; and west of the ditch, between the ditch and the highway, there are about fifty acres which have not been developed for lots. The acre covered by the easement lies, of course, east of the ditch.

The T.V.A. offered four witnesses as to damage, and their estimates ranged from $200 to $80. In so testifying, they assumed that the highest and best use of the acre involved is as farm land, for which it is now being used. They testified that there is no incidental damage. The president of defendant corporation, on the other hand, testified that if the acre be valued on the basis of the number of lots that could have been carved out of it, it had a value of $125,055 and that, subservient to the easement, it has a value of only $200. He further estimated that the incidental damage is $25,000.

■ The award should be an amount equal to the difference between the reasonable market value of the entire tract immediately before and immediately after the taking, or, what amounts to the same thing, an amount equal to the decrease in the reasonable market value of the fee in the land covered by the easement plus the incidental damage to the tract outside the easement area. (United States ex rel. and for Use of T. V. A. v. An Easement and Right of Way etc., 182 F.Supp. 899 (M.D.Tenn.1960) and United States ex rel. T. V. A. v. Baker, W.D. Tenn., No. 1293, unreported).

The owner relies heavily on Cementerio Buxeda, Inc. v. People of Puerto Rico, 196 F.2d 177 (1st Cir. 1952), in which it was held that, in making an award

in the condemnation of part of a cemetery, it was error to exclude evidence of the value for cemetery lots of the property taken. However, the commissioners in the instant case, as heretofore indicated, admitted such evidence. The question here in this connection is to determine how much weight under these circumstances should be given to this evidence.

All of the stock of the defendant corporation sold in 1963 for $100,000, and the corporation at that time had assets other than this real estate.

■ It appears that, of the approximately eight acres of lots that have been developed, about 8000 individual lots are unoccupied. The proof further shows, and the president of defendant corporation admitted, that future development will be contiguous to and eastwardly from these presently-developed lots; and the proof further shows that there are fifty undeveloped acres that may be additionally developed before the ditch is reached. Burials began in this cemetery in 1954, and since then, through 1964, the average number of burials is 30. The largest number in any one year, 1964, is 58. Based on a very liberal estimate of the number of burials per year in the future, it would require, the proof shows, over 200 years to consume these fifty acres alone. It is not altogether clear from the proof that the acre covered by the easement could not be used for cemetery lots. There are not, as stated, any towers or poles on this tract. But even if it could not be so used, we believe and conclude that one purchasing this entire tract for use as a cemetery would not decrease his offer by as much as $500 because of the unavailability for lots of this one acre in the southeast corner.

■■ The president of the defendant corporation, as stated, also testified that there was incidental damage of $25,000. He based this on the fact that the power line—that part which crosses the corner of this tract and other parts which do not—can be seen from the cemetery and is unsightly. However, the owner cannot claim such damage to the extent that

it is based on that part of the line not on its property; moreover, we conclude that there is no incidental damage to the remainder of the tract as a result of the line crossing the corner of this tract.

It results that the award of the commissioners should be affirmed.